IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Tracy M. Hughes, | ) | C/A No.: 1:13-1116-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.    Relevant Background

A.    Procedural History

On September 8, 2009, Plaintiff filed applications for DIB and SSI in which she alleged her disability began on January 30, 2007.  Tr. at 165–71.  Her applications were denied initially and upon reconsideration.  Tr. at 107, 110, 113, 115.  On April 19, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") William F. Pope.  Tr. at 47–106 (Hr'g Tr.).  At the hearing, Plaintiff amended her alleged onset date to April 11, 2011.  Tr. at 24.  The ALJ issued an unfavorable decision on June 15, 2012, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 24–46.  Because Plaintiff's date last insured was prior to the amended alleged onset date, the ALJ dismissed Plaintiff's DIB claim and addressed only her SSI claim.  Tr. at 24. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on April 25, 2013.  [Entry #1].

B.    Plaintiff's Background[1]

Plaintiff was 47 years old at the time of the hearing.  Tr. at 50.  She completed high school and some college courses.  Tr. at 51.  Her past relevant work ("PRW") was as a cashier, certified nursing assistant, construction laborer, sales representative, realtor,

---

[1] The undersigned typically provides a detailed summary of a plaintiff's medical history and the testimony at the administrative hearing.  However, the narrow scope of review on Plaintiff's allegations of error and the comprehensive background provided in the Commissioner's brief [Entry #22] renders such a summary superfluous in this case.

cook, quality control for molding operation, and property manager. Tr. at 100. She alleges she is unable to work because of depression, post-traumatic stress disorder, spinal problems, osteoarthritis, bone spurs in her neck, and the residual effects of a right knee injury. Tr. at 58–59. Plaintiff testified that she had ten family members die in a period of four years prior to 2007 and that she was kidnapped, raped, and almost murdered in 2006. Tr. at 82, 86.

C.    The ALJ's Findings

In his decision dated June 15, 2012, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant has not engaged in substantial gainful activity since April 11, 2011, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

2.    The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, status post posterior lumbar interbody fusion at the L5–S1 level; degenerative disc disease of the cervical spine with spondylosis at the C5–C6 level; residual effects of a right knee injury; osteoarthritis; mild bone spurs of the bilateral hips; obesity; major depressive disorder; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following limitations: only simple, routine tasks; a supervised environment; no required interaction with the public or "team"-type interaction with co-workers; no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over two hours in an eight-hour workday; only occasional balancing and climbing of stairs or ramps; no crouching, kneeling, crawling; or climbing of ladders or scaffolds; no foot pedal controls with the right lower extremity; avoidance of unprotected heights, vibration, and machinery with exposed, hazardous, moving parts; and an

environment reasonably free from dust, fumes, gases, odors, and extremes of temperature and humidity.

5. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

6. The claimant was born on March 18, 1965 and was 41 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45–49 (20 CFR 404.1563 and 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 26–46.

II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) the ALJ erred in implying Plaintiff should amend her onset date where it was clear that Plaintiff did not understand the legal effect of doing so;

2) the ALJ erred in failing to allow Plaintiff to testify fully regarding matters on which the ALJ relied in denying Plaintiff's claim;

3) the ALJ failed to properly consider the side effects of Plaintiff's medications;

4) the vocational expert ("VE") erred in capriciously reducing the number of available jobs by 50% in an attempt to reflect only those positions that did not require interaction with the general public; and

5) the ALJ's questions to the VE included a vague, undefined term.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year,

impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment.  *See* 20 C.F.R. §§ 404.1520, 416.920.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b), Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from

---

she will be found disabled without further assessment.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for

the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

  B.  Analysis

    1.  Amended Onset Date

  Plaintiff asserts that she did not understand the impact of amending her alleged onset date at the administrative hearing and that the ALJ created a hostile environment in which he pressed her non-attorney representative to amend the onset date. [Entry #20 at 3–6]. Plaintiff asks that the matter be remanded to permit her to proceed with a hearing with a full understanding regarding the legal and economic ramifications of amending her onset date. *Id.* at 6. The Commissioner responds that Plaintiff understood and anticipated amending her onset date. [Entry #22 at 12].

  A review of the hearing transcript reveals the following exchange between Plaintiff and the ALJ:

> ALJ:  Okay. So let's move on. I'd like to move on now to address the date last insured.
>
> REP[4]:  Okay.
>
> ALJ:  Ms. Hughes, your earning record shows that your insured status expired on September 30th, 2009, several years ago. In order to qualify for disability benefits under Title II of the Social Security

---

[4] The hearing transcript erroneously identifies Plaintiff's non-attorney representative as an attorney.

Act, it is necessary that you not only establish continuous period of disability for one year, in other words, 12 consecutive months, but it is also required that such period begin on or before your date last insured, again, in your case, September 30th, 2009. Those are for Title II benefits, and those are part of the benefits on appeal today.  Has it been explained to you ma'am?

CLMT:    No, sir.  I'm not sure what you're saying.

ALJ:     All righty.

REP:     She doesn't understand that the acronym of DLI.[5]

ALJ:     Date last insured --

CLMT:    Date last insured.

ALJ:     -- is what I said, ma'am.

CLMT:    When you mean "insured," insured for what?

ATTY:    For your benefits.

CLMT:    Oh, okay.  I'm sorry.

ALJ:     This is something your representative needs to explain to you or should have and probably did, frankly.

CLMT:    Yes, sir.

ALJ:     But if you would like another opportunity to have it explained to you, no problem with that whatsoever.  If you'd like to step out, Ms. Wessendorf, whatever you would prefer.

REP:     You want me to re-explain it?

CLMT:    No.  I'm fine.  I'm sorry.

REP:     Okay.

---

[5] The undersigned notes that the ALJ did not use the acronym DLI.

CLMT:  I was still thinking car insurance, and my mind didn't make the switch.  I apologize.

ALJ:  Okay.

Tr. at 59–60.

Later in the hearing, the issue of Plaintiff's alleged onset date was addressed in the following exchange:

REP:  I want to talk about your depression for a few minutes.

ALJ:  And we're talking about what?  Are you making a motion to amend the onset date?

REP:  Yes, I am making a motion to amend the onset date to April 11th, 2012.[6]

ALJ:  Okay.  And, of course, doing that, you're also making a motion to withdraw the Title II?

REP:  Title II, yes [INAUDIBLE].

ALJ:  Okay.  Thank you.  Thank you so much.  Please go right ahead.

Tr. at 81–82.

Based on these exchanges, Plaintiff argues that she did not understand what was happening during the hearing or the legal impact of her non-attorney representative's motion to amend the alleged onset date at the prompting of the ALJ.  [Entry #20 at 5].

---

[6] Although the hearing transcript notes that the amended alleged onset date was April 11, 2012, the ALJ's decision provides that the amended alleged onset date was April 11, 2011, and the ALJ based his findings on that date.  *Compare* Tr. at 82 *with* Tr. at 24.  It appears from the transcript that Plaintiff's non-attorney representative approximated April 11, 2011, as the date of Plaintiff's back surgery.  Tr. at 70–71.  In light of Plaintiff's testimony that her pain level was much worse prior to her back surgery (Tr. at 95), it is unclear why the representative or the ALJ would have found the date of her surgery to be a reasonable amended onset date.

Plaintiff further argues that the ALJ and her non-attorney representative chilled her ability to comfortably ask for an explanation of the term "onset date" and the legal impact of amending it.  *Id.*  She points to an exchange during the end of her testimony in which she stated that the ALJ had given her hell during the hearing and made her feel like he thought she was liar.  *Id.* (citing Tr. at 97).

The Commissioner responds that Plaintiff's argument that the ALJ improperly influenced her to amend her onset date is disingenuous.  [Entry #22 at 12].  In support, the Commissioner references a letter Plaintiff wrote to the Appeals Council on August 15, 2012, in which she "reported that she met and discussed with her representative prior [to] her hearing the prospect of amending her onset date, and the representative's recommendation to do so should the issue arise."  [Entry #22 at 12].

The Commissioner's description of the letter omits significant information.  In the letter, Plaintiff states that she did not meet with her non-attorney representative until the day of the hearing despite having gone to the office three or four times over the prior several months to sign paperwork.  Tr. at 287.  She noted that they met for approximately five minutes prior to the hearing.  *Id.*  She stated that, during that time, the representative advised her that "if the judge wanted to change the onset date of [her] disability that [she] was to agree to it as it meant there was a '99% chance that he was going to approve [her] for disability' and that was his way of saying yes without coming right out and saying so."  *Id.*  Plaintiff indicated that the representative stated the only disadvantage to agreeing to an amended onset date was that Plaintiff would receive less back pay.  *Id.*

Based on a complete reading of the letter cited by the Commissioner, the undersigned does not find that it demonstrates Plaintiff's understanding of the legal effect of amending her onset date. Rather, the letter creates even more confusion about what Plaintiff understood with regard to this issue during the hearing.

The Commissioner also argues that Plaintiff's contention that she did not understand the issue surrounding the date last insured is without merit because (1) if she did not understand the issue, her representative had the opportunity to clarify it with her, and (2) Plaintiff performed well on a mental examination. [Entry #22 at 12].

The undersigned finds these arguments unavailing. With regard to the second argument, the undersigned finds that whether Plaintiff performed well on a mental status examination has no bearing on whether she understood the intricacies of Social Security law. With regard to the first argument, the undersigned concludes that Plaintiff was not given a meaningful opportunity for an explanation of the issue. During the hearing, Plaintiff explicitly stated that she did not understand the ALJ's comments regarding the date last insured. Tr. at 59–60. While the ALJ stated that Plaintiff could have her representative explain the issue, he also stated that the representative had probably already provided an explanation. Tr. at 60. The representative then asked Plaintiff if she wanted the issue "re-explain[ed]." *Id.* Based on a careful reading of this exchange, as well as Plaintiff's apology for her lack of understanding, the undersigned agrees that the ALJ and representative chilled Plaintiff's ability to comfortably seek an explanation of issue. This chilling effect appears to have been exacerbated by the ALJ's numerous

12

statements during the hearing that suggested he did not believe Plaintiff's testimony. *See, e.g.*, Tr. at 64, 66–67, 73, 75.

It is apparent from the transcript that the ALJ prodded Plaintiff to amend her onset date and that her representative did so without consulting her. It is not apparent from the transcript or the general record that Plaintiff understood the implications of amending her onset date. For these reasons, the undersigned recommends remanding this matter to the ALJ for further consideration of Plaintiff's claim based on her original onset date of January 30, 2007.

### 2.     Credibility Determination

Plaintiff next argues that the ALJ erred in failing to permit her to testify fully regarding matters on which the ALJ relied in discounting her credibility. [Entry #20 at 6]. Plaintiff specifically argues that because the ALJ did not believe her testimony that she was covered by worker's compensation even though she was only working part time, he should have permitted her to provide written documentation supporting her assertion. *Id.* at 6–7.

During the hearing, Plaintiff testified that she received worker's compensation benefits while working part time for Ramrod Construction. Tr. at 65–66. Subsequently, the following exchange occurred:

ALJ:     Okay. You say you were working part time for them, but they --
         but you had workmen's comp?

CLMT:    Yes, sir.

ALJ:     Okay. I'll go ahead --

CLMT:   I don't think I even got a --

ALJ:    I'll let you go ahead and figure that out, Ms. Wessendorf.  That's an easy one for me.

CLMT:   But I don't understand what I've done wrong.  Mr. Ramsey sent me to workmen's comp.

REP:    We're not saying that you did anything wrong.  What we're saying is that you were only working part time for him --

CLMT:   Yes, ma'am.

REP:    -- and that he -- and he put you on workers' comp, and that's very unusual for a part-time employee to have workers' compensation benefits.

CLMT:   I can bring it in -- I don't even think they gave me a 1099.  I mean, I didn't work -- I'd get maybe 100 -- 200 a month from him.

ALJ:    Well, that would be extraordinary in itself.

CLMT:   And I'll bring all that paperwork in.  Yes, sir.

ALJ:    I'm not asking for that at all.  To be honest with you, probably I'm going to get it, I'd get it myself.

REP:    Do you want it?

ALJ:    Nope.

Tr. at 66–67.

Plaintiff asserts that it is patently obvious from this exchange that the ALJ did not believe Plaintiff was working part time and was still covered by worker's compensation. [Entry #20 at 7].  She contends that because the ALJ did not want documentation of her work history, she was not afforded a full and fair hearing.  *Id.*

14

Rather than directly addressing Plaintiff's argument, the Commissioner argues generally that the ALJ's credibility determination is supported by substantial evidence. [Entry #22 at 18–20].  The Commissioner states that even assuming *arguendo* that the ALJ did not fully develop the record with regard to Plaintiff's work activity, the multiple other reasons he cited for discounting her credibility were legally sufficient.

In his decision, the ALJ notes that worker's compensation for a part-time worker is very uncommon and relies, in part, on this perceived inconsistency in discounting Plaintiff's credibility.  Tr. at 40.  As the Commissioner notes, the ALJ also cited several other reasons for discounting Plaintiff's credibility.  However, in light of the general demeanor of the ALJ during the hearing, the undersigned declines to extend the harmless error doctrine to the ALJ's refusal to permit Plaintiff to submit evidence that corroborated her testimony.  While the reasons offered by the ALJ to support the credibility determination would ordinarily be sufficient, the undersigned has serious reservations regarding the ALJ's approach to Plaintiff's claim.  The ALJ's treatment of Plaintiff during the hearing suggests that he had already decided to render an unfavorable decision.  Consequently, the undersigned is unable to determine whether the ALJ's credibility finding was supported by substantial evidence or whether he selectively identified evidence to support the finding he intended to make.  For these reasons, the undersigned recommends remanding this matter to the ALJ for additional consideration.

### 3.    Remaining Allegations of Error

In light of the foregoing recommendations, Plaintiff's remaining allegations of error are not addressed.  On remand, however, the undersigned recommends directing the

ALJ to specifically address Plaintiff's allegations of medication side effects, obtain additional VE testimony regarding available jobs in light of the restriction to no interaction with the public, and eliminate or define the term "supervised environment." The undersigned notes that the recommendations in this matter are in no way intended to suggest that the ALJ should award benefits on remand.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 1, 2014                                      Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

      The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

      Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

      **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).